Linda Sue **BUSH**, Plaintiff-Appellee

v.

James Larry **BUSH**,
Defendant-Appellant,

v.

James H. **BUSH** and wife, Aileen Bush,
Intervening Petitioners-Appellants

Court of Appeals of Tennessee,
Middle Section at Nashville.

Oct. 3, 1984.

Permission to Appeal Denied by
Supreme Court Jan. 22, 1985.

Howard F. Butler, Clara Willis Byrd, Butler, Lackey, Holt & Snedeker, Nashville, for defendant-appellant.

Joe P. Binkley, Jr., Nashville, for intervening petitioners-appellants.

James W. Stinnett, Jr., Stinnett, Wilkinson & Wilson, Ashland City, for plaintiff-appellee.

ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(With the consent of participating judges, the original opinion has been abridged for publication.)

In this divorce case, the defendant, James Larry Bush has appealed from the judgment of the Trial Court which granted to the plaintiff Linda Sue Bush, an absolute divorce, custody of two children, periodic alimony and child support, the family home and contents and an automobile.

Defendant's five issues on appeal challenge each of the major portions of the decree. In addition, defendant's parents, who intervened seeking custody of the children, have filed a brief challenging the grant of custody to the plaintiff.

The parties were married on June 7, 1974, and have produced two children, a son aged 7 years and a daughter aged 3 years. The plaintiff is a housewife. The defendant is a dentist.

The defendant's first complaint on appeal is that the divorce should have been granted to him and not to the plaintiff.

Defendant first argues that plaintiff was guilty of falsely accusing him of adultery. *Reitano v. Reitano*, 52 Tenn.App. 289, 373 S.W.2d 213 (1963); *Humphreys v. Humphreys*, 39 Tenn.App. 99, 281 S.W.2d 270 (1954).

■ There is evidence that defendant visited his dental assistant in Reno, Nevada, and that, in May, 1983, defendant spent the night in the apartment of his dental assistant. If this evidence be accepted, the accusation of adultery was not so unfounded as to be cruel and inhuman treatment.

Defendant next relies upon the plaintiff's admission of her own adultery after the final separation of the parties and at times when the children were visiting with their father.

Defendant cites authority to the effect that adultery is a complete bar to divorce on grounds of cruel and inhuman treatment.

In *Canning v. Canning*, 59 Tenn.App. 678, 443 S.W.2d 502 (1968), the husband sued for divorce on grounds of cruel and inhuman treatment, which the wife denied, alleging adultery of the husband. The husband admitted living with another woman as man and wife for many years, buying a home with her as husband and wife, deeding his interest to her, and claiming her as an exemption on income tax returns. This Court, with a strong dissent, affirmed the dismissal of the husband's suit by directed verdict.

In *Dukes v. Dukes*, Tenn.App.1975, 528 S.W.2d 43, this Court affirmed a decree which dismissed the wife's suit for divorce from bed and board and granted a divorce to the husband in spite of evidence of adultery on his part. This Court said:

... The record does not present the strongest case in favor of the appellee-husband, but it does present strong reasons why the marriage of these parties should be dissolved. Their married life has clearly been a period of constant turmoil and successive altercations. The evidence does not preponderate against the decree of the Trial Judge which must be affirmed. T.C.A. § 27–303.

In *Clark v. Clark*, Tenn.App.1982, 644 S.W.2d 681, this Court held that misconduct occurring after separation may be grounds for divorce, distinguishing *Chastain v. Chastain*, Tenn.1978, 559 S.W.2d 933, wherein the Supreme Court held that wife's adultery after the husband had abandoned her did not disentitle her to a divorce on the ground of abandonment. In *Chastain*, the Supreme Court said:

[3] An examination of the pertinent statutes indicates that recrimination is allowed as a defense only to a complaint for divorce based upon the ground of defendant's adultery ... However, the reported cases indicate that our courts have sometimes mistakenly treated the defense defined in T.C.A., § 36–818, as one of recrimination. See *Canning v. Canning*, 59 Tenn.App. 678, 443 S.W.2d 502 (1968).

... [4] Therefore, it is our opinion that in a case such as this in which the ground for divorce is one of the "causes of divorce" specified by T.C.A., § 36–802, the "ill conduct" of the complainant may constitute a defense to the complaint only if such "ill conduct" is shown to be "a justifiable cause for the conduct complained of." For instance, the defendant may neutralize his abandonment and failure to support his wife by showing that such misconduct on his part was brought about by her ill conduct toward him. See *McClanahan v. McClanahan*, 104 Tenn. 217, 56 S.W. 858 (1900).

[5] Applying this rule to the facts of the instant case, it is obvious that the adultery of the plaintiff committed *after* the defendant husband had abandoned her and turned her out of doors and refused or neglected to provide for her could not have been "a justifiable cause" for the alleged abandonment on the part of the defendant. Therefore, in the circumstances of this particular case, plaintiff's adultery does not disentitle her to a divorce. This Court recently denied certiorari in a case in which the Court of Appeals had reached the same conclusion in an unreported opinion of that court.

## II

[6] It has been suggested that although the adultery of the plaintiff under the facts of this case did not constitute a defense under T.C.A., § 36–818, and could not be asserted as recrimination under T.C.A., § 36–811, because the ground for divorce alleged by the plaintiff was not adultery, nevertheless, her act should repel her because of the equitable doctrine of unclean hands. We cannot agree; unclean hands is not listed as a statutory defense to an action for divorce and the more recent and better reasoned cases hold that, except for fraud and deceit upon the court, which are always available as defenses in any court, the clean hands principle does not apply in divorce litigation. *Bales v. Bales*, 33 Ohio Misc. 221, 294 N.E.2d 252 (1971); *Ryan v. Ryan*, Fla. 277 So.2d 266 (1973); *De La Portilla v. De La Portilla*, Fla.App., 287 So.2d 345 (1973).

■ In the present case, there is no evidence that the indiscretions of plaintiff occurred prior to or contemporaneously with the cruel and inhuman conduct of which the husband has been found guilty. Therefore, the indiscretions of the wife could not possibly have been "justifiable cause" for the husband's misconduct within the contemplation of TCA § 36–.818 (now § 36–4–120), cited in *Chastain*, supra.

■ There is, therefore, no merit in appellant's contention that the wife herein is disentitled to a divorce by her admission of indiscretions after the misconduct of the husband and after the final separation.

■ As to appellant's insistence that the divorce should be granted to him because of such admissions, this Court is not disposed to disturb the finding of the Trial Judge that the real cause of the estrangement of the parties, their separation and ultimate divorce was and is the misconduct of the husband. As has been stated many times in many ways, a divorce suit is not designed to determine which spouse has been perfect in behavior, for perfection is found no more in marriage than elsewhere. Seldom is a marriage dissolved in a contested case, without some evidence of some imperfection in both spouses. It is the task of the courts to determine the fault which was responsible for the end of domestic harmony without which no marriage can be expected to endure.

The testimony which the Trial Judge accepted as true shows that the fault lay with the husband. The case having been tried orally before the Trial Judge, this Court is not in position to revise his finding as to the credibility of witnesses. *State, ex rel Balsinger v. Town of Madisonville*, 222 Tenn. 272, 435 S.W.2d 803 (1968).

■ Appellant next insists that the Trial Court erred in "vesting" custody of the minor children in the plaintiff. This Court does not understand that custody of children is "vested" by a divorce decree. In

view of TCA § 36–6–101(a), it is considered that an "award" or determination of custody of a minor child does not amount to a vesting, but an entrustment until further order of court.

Appellant concedes that he would not be able to personally care for the children during his working hours when his parents would supervise them. Thus, the issue is whether the mother or the grandparents are the preferrable custodians.

In *Logan v. Logan*, 26 Tenn.App. 667, 176 S.W.2d 601 (1943), this Court reviewed a divorce decree which granted custody of a 5 year old child to its mother but ordered her to deliver the child to its paternal grandparents one week each month. The decree was modified to commit exclusive custody to the mother and relieve her of having to divide custody with the grandparents. This Court said:

[1, 2] All our cases recognize that the welfare of the child is the paramount consideration, and that ordinarily a child's welfare will be better fostered with its parents than with other persons. The case of *Stubblefield v. State ex rel. Fjelstad*, 171 Tenn. 580, 106 S.W. (2d) 558, holds that a parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons, even though they are much attached to the child. This is particularly true in a case like this where the parent is the mother and the child is of such tender age as to need a mother's care.

In *Stubblefield v. State, ex rel. Fjelstad*, supra, the child was four years of age, its mother had died, its father sought to regain custody from the great grandfather of the child. The Supreme Court awarded custody to the father and said:

... [T]he court would not be justified to disregard or fail to properly weigh considerations of parental right. The parent's right is certainly paramount, other considerations being equal. A father is *prima facie* charged with the proper care and is entitled to custody of his child unless that custody is resisted on grounds that he is not fit for the trust, and the objection can only be sustained by a clear preponderance of convincing proof. The presumption is in his favor in the absence of a clear showing that he is disqualified for the proper discharge of parental duty. The court cannot lightly, and without good cause, invade the natural right of the parent to the custody, care, and control of his infant child.

As stated in *Hernandez v. Thomas*, 50 Fla., 522, 39 So., 641, 645, 2 L.R.A. (N.S.), 203, 111 Am.St.Rep., 137, 7 Ann.Cas., 446:

"In accordance with the prevailing rule in the American courts, that in awarding the custody of children the paramount consideration is the welfare of the child, rather than the technical legal right of the parent. While this is true, yet the court should not lightly and without good cause invade the natural right of the parent to the custody, care, and control of his infant child."

In the case of *State ex rel v. Richardson*, 40 N.H., 272, the Supreme Court of that state held:

"*Prima facie*, however, the right of custody is in the father; and when the application is resisted upon the ground that he is unfit for the trust, by reason of grossly immoral conduct, harsh usage of his child, or other cause, a proper regard to the sanctity of the parental relation will require that the objection be sustained by clear and satisfactory proofs."

This proposition of law was likewise clearly stated in the case of *State ex rel. v. Martin*, 95 Minn., 121, 103 N.W., 888:

"The right of a parent to the care and custody of his minor child is, both at common law and under the statute, paramount and superior to the right of a third person. The presumption is that the parent is a fit and suitable person to be intrusted with the care of his child, and the burden is upon him who asserts the contrary to prove it by satisfactory evidence."

We quote from 46 C.J., pp. 1228–1230: "A parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons and this rule applies although such others are much attached to the child and the child is attached to them, and prefers to remain with them, and they are in all respects suitable to have the custody of the child and able to support and care for it, or even though they are better able to afford the child material advantages."

It is further stated in above authority that these rules have been applied in favor of father or mother against grandparents, aunts, and uncles, maternal or paternal.

In *Clarke v. Lyon*, 82 Neb., 625, 631, 118 N.W., 472, 474, 20 L.R.A. (N.S.), 171, it is said:

"The court has never deprived a parent of the custody of a child merely because on financial or other grounds a stranger might better provide. The statute declares and nature provides that the right shall be in the parent, unless the parent be affirmatively unfit."

We need not multiply authorities. The foregoing are typical of the strong current of judicial thought in our country.

■ The foregoing authorities support the policy that, until it be shown that neither parent is a suitable custodian, it is improper to consider entrusting custody to a non-parent.

The Trial Judge determined that the mother was a proper custodian of these young children. His decision comes to this Court for review de novo upon the record with a presumption of correctness unless the evidence preponderates otherwise. TRAP Rule 13(d). *Hass v. Knighton*, Tenn.1984, 676 S.W.2d 554.

■ Appellant cites *Born v. Born*, Tenn. App.1981, 614 S.W.2d 49 and refers to a recording of a telephone conversation between plaintiff and defendant. A miniature "microcassette" is found in the record, which purports to be the recording relied upon by appellant. This Court has no equipment for producing sound from a "micro-cassette". It is therefore not an intelligible part of the record and will not be considered as such.

■ The record, when transmitted to this Court, must be in intelligible form. If a microscope is required to view details of an exhibit, a microscope must be provided with the record. Likewise, a projector is required for moving pictures or slides, and any other necessary equipment for obtaining intelligence from the record.

■ Appellant next relies upon the wife's admitted indiscrete social life; but the uncontroverted evidence shows that any overt indiscretions occurred when the children were visiting with appellant or his parents. Visiting in the home of a male friend with the children during the day time when no misconduct occurred is not deemed justification for depriving these children of the natural affection, attention and care of their mother.

■ The taking of the older child to an "R" rated movie on a single occasion is not deemed conclusive of the mother's fitness.

■ The Trial Judge was faced with a most difficult choice in passing upon credibility. While the wife candidly admitted her mistakes, the husband adamantly denied every accusation of violence and cruelty. By his decision, the Trial Judge determined that the husband was guilty in spite of his sworn testimony of innocence. This means that the Trial Judge declined to believe appellant on his oath. This being true, the Trial Judge was justified in disbelieving all of appellants' testimony. Falsus in uno, falsus in omnia. *Frierson v. Galbraith*, 80 Tenn. (12 Lea) 129, 1883). *Buck v. West*, 58 Tenn.App. 539, 434 S.W.2d 616 (1968).

■ In addition to the determination of credibility from personal observation, the Trial Judge was privileged to observe the

attitude and demeanor of the parties in respect to their suitability as custodians. This Court does not have the benefit of such personal observation. Absent some compelling reason otherwise, considerable weight must be given to the judgment of the Trial Court in respect to credibility and suitability.

■ The evidence does not preponderate against the decision of the Trial Judge to place custody of the children with their mother. At any time it should appear to the Trial Court that the welfare of the children requires, the Trial Court has statutory authority to change its custody order.

A review of the record in this case and experience in other similar bitter marital disputes suggests the necessity of a warning to the parties: to the mother to maintain an exemplary record of motherhood, and to the father to refrain from harassment by unjustified litigation regarding custody. The courts have little patience with efforts of parents to "have their way" to the disadvantage, embarassment and injury of the children.

It is not easy for either parent to give up free access to the society of a child, but this is the price of divorce. The Courts have been unable to devise a means of providing both separated parents the constant society of the children. It is inherent in separation and divorce that the children are deprived of the normal society of one of the parents and one of the parents is deprived of the normal society of the children.

Appellant next insists that the Trial Court "abused its discretion" in the division of the property of the parties.

At the time of their marriage, neither party owned any property of any consequence. The wife worked in the dental office of the husband until February, 1982. During their marriage, the parties accumulated interests in certain property which includes a farm, a home, an automobile, a truck, farm equipment, household goods and dental clinic equipment. The briefs contain not a single citation to the record where the value of such property may be found. The record has been searched for this information, and it has not been found. It must be concluded that the parties were so busy with their charges and counter-charges that they overlooked the matter of proving the value of their property for purposes of equitable division.

The Trial Judge made no finding of fact except to state in his decree that the divorce was granted to the plaintiff on grounds of cruel and inhuman treatment.

The decree makes the following division of property:

1. To the wife:
   (a) ... "the automobile and all other personal property now in her possession.
   (b) ... "whatever—interest—defendant—may have in the house and lot owned by the parties—and she will pay the mortgage indebtedness". (Property is fully described.)

2. To the husband:
   (a) "... whatever—interest—plaintiff—may have in the—farm—and he will be responsible for the indebtedness thereon—" (Farm described.)
   (b) "... Whatever—interest—plaintiff—may have in the truck owned by the parties—".
   (c) "—Whatever—interest—plaintiff may have in the farm equipment, machinery and cattle—."

By a subsequent decree, the divorce decree was amended to award to the husband the following:

1. One-half of the children's pictures.
2. Medical books, personal books and bookcase.
3. His clothes and personal items.
4. 22 cal. rifle.
5. 30–30 cal. deer rifle.
6. Guitar.
7. Two (2) fishing rods and tackle box.
8. Dental and personal tools and supplies.
9. Either the riding garden tractor or small sail boat.

It is further ORDERED, ADJUDGED AND DECREED that if the property in Hickman County which came to the defendant through his great grandfather has not already been deeded to the defendant, the same is hereby awarded to him.

The brief of appellant undertakes to state facts as to value and origin of property which are not supported by citation to the record and as to which no evidence is found in the record. Without evidence in the record, this Court cannot review the justice of the division of property by the Trial Judge. The parties have already had their day in court, and it should not be necessary to hold another trial to give them an opportunity to provide what should have been provided in the first instance. However, this Court is reluctant to approve a judgment which is unsupported by evidence in an apparently complete record.

■ Accordingly the judgment of the Trial Judge as to division of property will be vacated and the cause will be remanded for a further hearing, finding of fact and judgment as to the division of the property of the parties. TCA § 27-3-128.

■ Finally, appellant argues that the Trial Court erred in awarding alimony in futuro. The judgment of the Trial Court states simply:

5. It is further ordered ... that the defendant will pay to the plaintiff the sum of $1,730.00 per month for the support of the plaintiff and the two minor children.

Appellant argues that he is unable to pay the amount required and that the plaintiff is able to go to work to support herself.

This Court is not impressed with the argument of a dentist with a specialty that he is unable to support his children and the wife who worked to help him get started in his career.

If the misconduct of defendant had not destroyed this marriage the wife would reasonably have expected a continued comfortable life as the wife of a prosperous professional man.

Upon remand, the allowance of support should be divided into categories of alimony and child support and; if applied for by either party, a further hearing may be held to adjust the amount of alimony and/or child support upward or downward in accordance with the needs of the wife and children and the ability of defendant. Until changed by the Trial Court, the present provision of support is not disturbed.

The judgment of the Trial Judge awarding the wife a divorce, child custody, child support and alimony, including attorneys fees, is affirmed.

The judgment of the Trial Court in regard to division of property is vacated. Upon remand, the Trial Court will hold such further hearing as may be necessary, will file a detailed finding of fact, and enter detailed judgment for division of property. Until the entry of such judgment, the possession of property recognized and awarded in the divorce decree will not be disturbed.

Costs of this appeal are taxed against the defendant-appellant.

The parents of appellant who filed an "intervening petition" in respect to custody have undertaken to appeal and present their views to this Court. Inasmuch as there has been no finding that both parents are unsuitable custodians, there is no basis for this Court to consider the efforts of these intervenors to obtain custody of the children. The cost of the appeal of the intervenors are taxed against them.

The cause is remanded to the Trial Court for further proceedings.

Affirmed in pat, Vacated in part, Remanded.

LEWIS and KOCH, JJ., concur.