IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2004 Session

## CLINTON WILLIAM CLARNEAU v. ANGELA DAWN CLARNEAU (NOW ATWOOD)

**Appeal from the Chancery Court for Bedford County**
**No. 23,185     J. B. Cox, Chancellor**

---

**No. M2003-02182-COA-R3-CV - Filed June 2, 2005**

---

This is a custody dispute. The trial court granted the father's petition to modify custody and changed primary custody of the parties' two minor children from the mother to the father, based on findings of a material change of circumstances and the best interests of the children. On appeal, we reverse the trial court's modification of custody finding there has not been a material change of circumstances justifying a change of custody and that the children's best interests are served by remaining with Mother.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and WILLIAM C. KOCH, JR., P.J., M.S., joined.

Lance B. Mayes, Nashville, Tennessee, for the appellant, Angela Dawn Clarneau (now Atwood).

Jason Ryan Reeves, Shelbyville, Tennessee, for the appellee, Clinton William Clarneau.

### OPINION

Father, Clinton William Clarneau, and Mother, Angela Dawn Clarneau (now Atwood), married in September of 1997 and divorced three years later in December of 2000. They were awarded joint custody of their two minor daughters, H.C. and S.C. Mother was awarded primary physical custody of the children, but Father was given a liberal visitation schedule.[1]

---

[1] Father was awarded visitation every Tuesday at 5 P.M. until Thursday at noon, every other weekend from Friday at noon until Sunday at noon, and from Sunday at 8 A.M. until noon on his "off" weekend. He was awarded four non-consecutive weeks of visitation during the summer, and the parties were instructed to equally share all major holidays.

Although there were numerous conflicts in the interim,[2] the parties adhered to the initial custody arrangement until January 11, 2002 when the court entered an *ex parte* order which granted total parenting responsibilities to Mother and required Father to show cause why his parenting responsibilities should not be limited. This change of custody was in response to Mother's petition to modify the permanent parenting plan[3] based on child neglect allegations brought against Father and his new wife, Valerie Clarneau, by the Department of Children's Services. Specifically, Father and his new wife had been charged with child neglect for disciplining Valerie Clarneau's two children, ages four and seven at the time. It was alleged that Father had locked them in the bathroom by securing boards across the bathroom door. This was accomplished by screwing the boards into the frame around the door.

Tiffany Clarneau Brown, Father's sister, testified at an August 2002 hearing that she had witnessed such an episode. She explained she observed Father locking his step-child in the bathroom. She also explained that Father would remove the light bulb to further punish the child because he was aware the child was afraid of the dark, which fear was so significant the child slept with the light on.

Following a hearing, the trial court admonished Father concerning his "method of discipline" and changed custody, awarding the children to Mother.[4] The trial court also held Mother in contempt for allowing the minor children to miss residential sharing time with Father, as previously ordered by the Court.

A mere eleven months later, December 2002, Father filed a petition to modify custody based on an allegation of domestic abuse against Mother by her new husband, Mike Atwood. It was further alleged the abuse was precipitated by Mike Atwood's addiction to his prescription medicine. Mother responded by attacking Father's fitness, emphasizing his "criminal background and his child abuse/child neglect charges," and asserting that modification of custody would be harmful to the children's well-being.

---

[2] For example, Father filed a petition to show cause and contempt in May of 2001 asserting that Mother allowed overnight visitors of the opposite sex in contravention of the court's verbal order and that Father should be awarded full custody of the children. Five months later, Mother filed an answer and counterclaim alleging that Father was behind on child support payments and home equity payments. Father responded by asserting that Mother refused to allow him to see the children on Sundays. The court ordered the parties to mediation and a hearing was conducted in November of 2001 at which time the court held both parties in contempt for their failure to follow prior orders of the court. The numerous conflicts between these parties, while not necessarily pertinent to this appeal, are indicative of their disdain for one another.

[3] The record does not contain a permanent parenting plan. It appears plans have been proposed but not adopted by the court.

[4] Custody was altered so that Father would exercise residential sharing with the children "every other weekend from Friday at 5:00 P.M. until Sunday at 5:00 P.M. and every Wednesday night from 4:00 P.M. until Thursday at 12:00 Noon or until Ms. Atwood returns to work and the meeting time will need to be adjusted."

At the hearing on Father's petition to modify custody, the court considered the testimony of Angela Perry, a licensed certified social worker, as well as testimony from the parties and extended family members. The court ultimately found:

> [T]he exposure of the minor children to the drug addiction of Respondent's husband [Mike Atwood] is a material change of circumstances that directly affects the best interests of the minor children and was not reasonably foreseeable by Petitioner at the time of the last Order. That, further, this Court believes that exposure to drug addiction is detrimental to the minor children and directly affects their best interests.

> That this Court must resolve the credibility issue raised by the testimony of Angela Perry, certified and licensed social worker, relaying to the Court statements of the minor child that she had witnessed physical abuse of Respondent by Respondent's husband, as compared with the denial of Respondent that there was never any physical abuse in her home. The Court resolves this issue squarely in favor of the testimony of Angela Perry and against Respondent. That, further, this Court finds that there has been physical violence in Respondent's home and that this violence was witnessed by the minor children. That, therefore, based on the testimony of Angela Perry, social worker, this Court finds that the physical violence in Respondent's home is a material change of circumstances that directly affects the best interests of the minor children and such violence was not reasonably foreseeable by Petitioner at the time of the last Order. That, finally, this Court believes that exposure to physical violence between Respondent and her husband is detrimental to the minor children and directly affects their best interests, although the children have suffered no apparent physical harm themselves.

After finding there had been a material change of circumstance, the trial court then analyzed the factors within Tenn. Code Ann. § 36-6-106 to determine what was in the best interest of the children. Following that analysis, the trial court granted Father primary physical custody of the parties' two minor children.[5]

Mother appealed and presents three issues. First, she asserts the trial court erred by qualifying social worker Angela Perry as an expert and allowing her to testify regarding statements made by one of the parties' two minor children. Second, Mother contends the trial court erred in finding that there was a change of material circumstance. Finally, she contends that modification of custody was not in the best interest of the children.

---

[5] We note, however, that the court did not adopt a permanent parenting plan as required by Tenn. Code Ann. § 36-6-404. The statute requires the adoption of a plan when minor children are involved except when previously divorced parties seek to modify "by an agreed order."

A trial court's custody determination is reviewed *de novo* upon the record with a presumption of correctness of the trial court's findings of fact unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); Tenn. R. App. P 13(d). If the trial court fails to make findings of fact, there is nothing in this record upon which Tenn. R. App. P. 13(d)'s presumption of correctness can attach, thus review of the facts is *de novo* on the record without a presumption of correctness. *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999); *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984). Issues of law are also reviewed *de novo* with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569-70. Moreover, because the trial court had the opportunity to observe the demeanor and credibility of the parents and other witnesses, considerable weight and discretion is given to the trial court's custody determination. *Bush v. Bush*, 684 S.W.2d 89, 94 (Tenn. Ct. App. 1984).

Once a decree awarding child custody has been entered, that decree is *res judicata* and "is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody." *In re B.A.L.*, No W2004-00826-COA-R3-JV, 2004 WL 3008810, at *4 (Tenn. Ct. App. December 23, 2004) (citing *Long v. Long*, 488 S.W.2d 729 (Tenn. Ct. App. 1972)). "[O]nce the trial court has made an initial determination with respect to custody, it cannot entertain a subsequent petition to modify custody absent a material change in circumstances such that the welfare of the child demands a redetermination. *Id.* Moreover, the burden of proof is on the non-custodial parent to show that there has been a material change in circumstances. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 830 (Tenn. Ct. App. 1999).

Thus, the "threshold issue" when determining whether to modify child custody is whether there has been a material change of circumstances since the prior custody determination. *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002). The Tennessee Supreme Court has instructed:

> While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," The following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." We note that a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being.

*Kendrick*, 90 S.W.3d at 570 (citing *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002)). If and when it is determined that a material change of circumstances has occurred, then we must determine

whether modification of custody is in the child's best interests using the factors enumerated in Tenn. Code Ann. § 36-6-106.[6] *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003).

After a lengthy hearing conducted over three days in August of 2003, the trial court concluded that the alleged physical violence in Mother's home and the children's exposure to Mike Atwood's drug addiction constituted material changes of circumstances. In arriving at this conclusion, the trial court relied heavily on the testimony of social worker Angela Perry.[7]

Mother contends the trial court erred by qualifying Angela Perry as an expert and allowing her to testify about statements made by the parties' minor children. Ms. Perry's first involvement with these two families had nothing to do with Mother or Father's petition to change custody. Ms. Perry was initially retained by Father and his new wife, Valerie Clarneau, to address family integration issues, to aid Father and Valerie Clarneau in their effort to "blend" their children from prior marriages in hopes of developing a more cohesive family unit.[8] Ms. Perry met with Father's new family a total of nine times. During one of these sessions, S.C., only two years old at the time, stated, "Daddy [Mike] hit Mommy." H.C., the older of the parties' children, said she had never seen any hitting.

Based upon the statement by S.C. that "Daddy [Mike] hit Mommy," Ms. Perry concluded that there had been physical violence in Mother's home. Ms. Perry's testimony of what S.C. said regarding violence in Mother's home comprised two elements. One, the opinon Ms. Perry formed based on S.C.'s four-word statement. Two, her recitation of what the two-year-old child said to her.

Tenn. R. Evid. 702 permits an expert to testify "in the form of an opinion or otherwise," only where the "scientific, technical, or other specialized knowledge" offered by the witness will substantially assist the trier of fact. Tenn. R. Evid. 703 requires an expert's opinion to be supported by trustworthy facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. . . ." Tenn. R. Evid. 703. The record before us is inadequate to qualify Ms. Perry as an expert witness. Thus, a professional opinion expressed by Ms. Perry must be excluded.

The exclusion of Ms. Perry's opinion leaves us with her recitation of what S.C. told her. The statement was that of a two-year-old child. It comprised no more than four words, that "Daddy [Mike] hit Mommy." Such a statement is inadmissible hearsay unless it comes in under a Tenn. R.

---

[6] The General Assembly amended Tenn. Code Ann. § 36-6-101(a)(2) in 2004, which amendments appear to have broadened the concept of material change in circumstances. See Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2004).

[7] At the time Angela Perry met with these children, she was certified but not licensed, because she had not yet practiced in the social work field for two years. As previously stated, the trial court concluded, "[B]ased on the testimony of Angela Perry, social worker, this Court finds that the physical violence in Respondent's home is a material change of circumstance that directly affects the best interests of the minor children. . . ."

[8] Father and Valerie Clarneau each have two children from prior marriages. Furthermore, Father and Valerie Clarneau were expecting a child of their own.

Evid. 802 exception. Tenn. R. Evid. 803(25) provides a narrow exception for statements by children. In pertinent part, the rule provides:

> Provided that the circumstances indicate trustworthiness, statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse or neglect, offered in a civil action concerning issues of dependency and neglect . . . , issues concerning severe child abuse . . . , or issues concerning termination of parental rights . . . , and statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse offered in a civil trial relating to custody, shared parenting, or visitation.

Tenn. R. Evid. 803(25). The advisory comments emphasize that, "Declarations under this hearsay exception are inadmissible if 'circumstances indicate lack of trustworthiness.'... Also worthy of consideration is the presence or absence of evidence corroborating the hearsay statement."

Unfortunately, the record fails to explain what the two-year-old S.C. meant by the four-word statement. We are given no guidance as to the circumstances of the event or what led up to or followed the alleged event. We are also without guidance as to what S.C. meant by the word "hit." The void of additional information requires that we speculate as to what actually occurred or, more significantly, what such a young child intends such a statement to mean. Did Mike Atwood "hit" Mother on the shoulder in a joking, non-violent manner or was it a violent blow? Was it inappropriately aggressive but not violent or abusive?

Of further significance is the fact that there is absolutely no corroboration of the alleged event. To the contrary, the parties' four-year-old child, H.C., said she had never seen any violence in the home. Similarly, Mother denied that there had been any physical violence in their home. She testified that Mr. Atwood had never hit her and that she had never hit Mr. Atwood.

We also find of great significance what Ms. Perry did not do following S.C.'s statement that "Daddy [Mike] hit Mommy." After S.C. made this statement, Ms. Perry met with her one time, for roughly thirty minutes; however, she did not find it necessary to have follow up sessions with S.C., conduct a home study of Mother's home, or report the incident to the Department of Children's Services. Ms. Perry's decision to take no further action suggests a lack of concern regarding the "alleged" violence in Mother's home.

For all of these reasons, we find S.C's statement is inadmissible. Therefore, it may not be a basis for the trial court's determination that there had been a material change of circumstances in the home or a part of the best interest analysis.

The trial court made a significant finding in the Order from which this appeal arises. It reads:

> That, further, this Court finds that there has been physical violence in [Mother's] home and that this violence was witnessed by the minor children. That, therefore, *based on the testimony of Angela Perry, social worker*, this Court finds that the

physical violence in [Mother's] home is a material change of circumstance that directly affects the best interests of the minor children and such violence was not reasonably foreseeable by [Father] at the time of the last Order. (emphasis added)

As the order expressly states, the trial court's finding was specifically based on the testimony of Ms. Perry. We have excluded the significant portion of her testimony, being the child's four-word statement to her and her professional opinion which was based on that statement. Thus, the finding of physical violence in Mother's home now lacks the factual foundation on which it was based.[9]

Mother also contends that the trial court erred in finding that Mike Atwood's addiction to prescription drugs constituted a material change of circumstances that posed a threat to the minor children. Mother first noticed Mike Atwood's excessive prescription drug use in June 2002. Despite his admitted use of prescription drugs, Mr. Atwood was able to work two full-time jobs and run his own business. Within three months of Mother noticing her husband's excessive use of his prescriptions, Mr. Atwood voluntarily checked himself into the New Life Lodge, a rehabilitation center. This was September 2002 and before the hearing on Father's petition to change custody.

Tiffany Brown, Father's sister, testified that Mike Atwood's addiction made his eyes bloodshot and caused a "relaxed" attitude. Ms. Brown also testified that while she had seen him upset, she had never seen him angry or violent. She stated that she had never witnessed him argue with Mother in front of the children. Of further significance, there is no evidence in the record that the children at risk of being harmed by Mr. Atwood.

Mike Atwood's drug addiction developed since the prior custody determination and was not known or reasonably anticipated at that time. Thus, if it were significant, if it posed a threat to the children, it would constitute a material change of circumstance. However, while drug addiction is a serious matter, the record suggests the children were not exposed to a risk, and Mr. Atwood promptly sought treatment. Based upon the foregoing, we conclude that his addiction did not affect the children's "well-being in a meaningful way." *Kendrick*, 90 S.W.3d at 570. This conclusion is supported by the trial judge's comment that other than the alleged physical violence – the focus of which was Ms. Perry's opinion and the two-year-old child's four-word statement – there had been "no apparent harm to the children as a result of this issue."[10]

Father had the burden of establishing a material change that affected the children in a meaningful way and he failed to meet this burden. Accordingly, we find there was no material change of circumstance and therefore a change in custody was not warranted.

---

[9] We acknowledge that there is other evidence of conflict in Mother's home, some of which pertains to Mr. Atwood's curio cabinet, and verbal exchanges with Mr. Atwood; however, the record makes it clear that the trial court based its finding of physical violence on the testimony of Ms. Perry.

[10] The trial court's Order finding physical violence in Mother's home was based on Angela Perry's testimony of what was allegedly witnessed by the minor children.

Since Father failed to establish a material change of circumstance, it is not necessary that we examine whether a change of custody is in the children's best interest; however, we choose to do so because we find there are compelling reasons to not name Father the primary residential parent. This finding is based on two circumstances that are of great significant to the best interest of the children analysis required by Tenn. Code Ann. § 36-6-106. They are Father's disturbing "method of discipline" and the risk of harm to the girls posed by his step-son. As discussed earlier, Father locked one of the step-children in the bathroom by screwing boards into the wall. To aggravate the situation, he removed the light bulb in the bathroom knowing the child was afraid of the dark. Such parental conduct is extreme, and it poses numerous and serious risks to the child. Furthermore, there are disturbing allegations of sexual threats against H.C and S.C., both very young girls, by Father's step-son, who is older than both girls. The record is unclear as to how such allegations came to light, however, not only did DCS conduct an investigation, but Angela Perry, the social worker, testified that her last three sessions focused on these allegations. The trial court was obviously concerned about these allegations, stating, "[T]o the extend [sic] that the testimony left open the debate any potential allegations involving [Father's step-son] the Court hereby adopts the recommendation of Ms. Becky Horde and makes that an order of this Court. [Father's step-son] shall not be left alone with [H.C. and S.C.] period." The trial court's concern is further evident by the fact its order granting Father custody contained the following cautionary instructions:

> That this Court finds that the step-mother shall not corporally punish these minor children for any reason. This restriction also applies to the step-father.
> . . . .
>
> This Court will not preclude the use of corporal punishment, however, it should be used only as an absolute last resort.
> . . . .
>
> That this Court adopts the recommendation of Officer Becky Hord requiring that Petitioner's [step-son] not be left alone with Petitioner's minor children.

The record is unclear as to Officer Becky Hord's role in this matter. We assume she was involved in DCS's investigation into the allegations of sexual abuse by the step-son. Regardless of her role or identity, the trial court's admonition of leaving the step-son alone with the girls, H.C. and S.C., is significant.

Accordingly, the judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion and for entry of a permanent parenting plan.[11] Furthermore, Appellee's motion for attorney's fees pursuant to Tenn. Code Ann. § 27-1-122 and Tenn. Code Ann.

---

[11]Both parties proposed permanent parenting plans, but the trial court, for no apparent reason, held, "[T]his Court will modify custody, however, neither Proposed Parenting Plans will be adopted." Tenn. Code Ann. § 36-6-404(a) instructs that any decree of modification "shall incorporate a permanent parenting plan."

§ 36-5-103(c) is denied. Costs of appeal are assessed against the Appellee, Clinton William Clarneau.

_____

FRANK G. CLEMENT, JR., JUDGE