IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2004 Session

# A.B.C. v. A.H.

**Appeal from the Juvenile Court for Knox County**
**No. E-6163     Carey E. Garrett, Judge**

------

**No. E2004-00916-COA-R3-CV -  FILED JANUARY 13, 2005**

------

This child custody case presents the following issues: (1) whether the trial court erred in awarding the father custody of the parties' child and (2) whether the trial court erred in ordering the father to pay the mother's attorney fees.  We hold that the trial court considered the relevant statutory factors and that the evidence does not preponderate against the trial court's award of custody to the father. We hold that the trial court did not abuse its discretion in ordering the father to pay the mother's attorney fees. Although not raised as an issue on appeal, we note that the father did not request child support from the mother and the trial court did not set child support. We hold that the father did not have the right to waive child support. Accordingly, we affirm the trial court's judgment regarding custody of the child, affirm the award of attorney fees, and remand this cause to the trial court for determination of the mother's child support obligation to the father.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and WILLIAM H. INMAN, SR.J., joined.

Denise Terry Stapleton, Morristown, Tennessee, for Appellant A.B.C.

Jerrold L. Becker and Samuel W. Brown, Knoxville, Tennessee, for Appellee A.H.

Elizabeth S. Smith, Knoxville, Tennessee, guardian ad litem for A.C.H.

**OPINION**

*I.*

The parties to this action, who were never married, met while the father was a student at the University of Tennessee. Within a few weeks, the parties began living together. The parties' child, A.C.H. ("Child"), was born on May 20, 2001. When their child was less than a year old, the parties

separated. A.H. ("Father") provided financial assistance to A.B.C. ("Mother") before and after the birth of Child. Father visited and spent time with Child before and after the parties' separation. After Father obtained employment with a substantial salary, Mother filed a petition to establish paternity alleging that Father had been shown by a voluntary DNA test to be the father of the parties' child. Father answered the petition, admitted paternity and filed a counter-claim for custody of the child. The parties entered into an agreed order establishing A.H. as the natural, biological father of Child and changed Child's surname to that of A.H.

A hearing on the issues of custody, visitation and support was held on November 4, 2003. At the close of proof, the child's guardian ad litem recommended that Father be awarded primary custody. The trial court determined that it was in the best interest of the minor child that Father be his primary custodian with liberal co-parenting time granted to Mother. The trial court further ordered that Mother's attorney had provided a valuable service, including a service to the minor child, and ordered Father to pay her attorney fees in the amount of $14,960.47 and pay the fee of the guardian ad litem. At the request of Father, Mother was not ordered to pay any child support. Mother appeals the trial court's award of custody to Father. Father appeals the trial court's award of attorney fees to Mother.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations which we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

## III.

Trial courts are vested with wide discretion in matters of child custody. Absent some compelling reason otherwise, considerable weight must be given to the trial court's judgment with respect to the parties' credibility and their suitability as custodians of children. *Bush v. Bush,* 684 S.W. 2d 89 (Tenn.App.1984). Appellate courts will not interfere with the custody decisions of trial courts except upon a showing of erroneous exercise of their discretion. *Mimms v. Mimms*, 780 S.W.2d 739 (Tenn.App. 1989), *Koch v. Koch*, 874 S.W.2d 571 (Tenn. App. 1993). In cases such as this, the welfare and best interests of the child are of paramount concern. *Koch* at 575. We are aware of the tremendous impact a custody decision has on the life of a child. We recognize that parents, being human, are not perfect and no parent can be deemed to be a perfect custodian. Therefore the trial court, in a case such as this, must determine which parent is more fit to be the custodian of the child. *Bah v. Bah,* 668 S.W. 2d 663, 666 ( Tenn.App.1983).

In making custody determinations, courts are guided by Tenn Code Ann. §36-6-106, which provides in pertinent part as follows:

> (a) ...[I]n any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment. . .
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
>       \*         \*         \*
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

It is apparent from the review of the trial court's order of final judgment and its written findings of fact and opinion incorporated therein, that the trial court properly considered the relevant statutory factors in reaching its custody decision. The trial court made the following pertinent findings of fact which we deem to be relevant:

> [Child] was born May 20, 2001. At the time of his birth the mother... was not sure who was the father. She had been seeing [Father] but she says she had cheated on him. [Father] says he believed the child was his as soon as he saw him. A DNA test July 22, 2001 established [Father] to be the father. . .with a probability of 99.99%. . .

[Mother] told the Department of Human Services she was raped and did not know who the father was in order to get AFDC, food stamps, housing, Tenn Care and day care from the state. She did not tell them she was receiving cash from [Father]. [Mother] did not name [Child] after [Father] in the beginning because she believed she would lose her DHS and KCDC benefits. She did not use the medical insurance provided by [Father] because if she took [Child] off of Tenn Care she could not get Tenn Care for herself.

When [Mother] was pregnant [Father] paid [Mother's] rent, furnished her a car, bought furniture and gave her Six Hundred Dollars ($600.00) to Eight Hundred Dollars ($800.00) cash per month. [Father] always visited, spent time with [Child] and helped to care for him when he was allowed and could. All went well until [Father] met his present wife, [S.H.]. As it was expressed in final argument, when she came onto the scene the problems started. When [S.H.] came into the picture [Father's] visitation became a problem and [Mother and Father] stopped getting along. Neither had filed to legitimate at this point but [Father] continued to provide support.

               *                     *                    *

On August 21, 2002, [Father] answered the petition, admitting paternity and alleging he was the fit and proper person to have primary care and custody and asking for same. He has been paying Two Thousand One Hundred Eight Dollars ($2,108.00) per month pursuant to the guidelines while the case has been pending. He has set up an educational trust fund for [Child] in which he placed Ten Thousand Dollars ($10,000.00) per year. [Mother] now wants an additional Two Thousand Dollars ($2,000.00) per month and a lump sum up front payment to her of Fifty Thousand Dollars ($50,000.00).

The first issue to resolve is who should be the primary custodian of [Child]. This decision must be made upon the best interest of [Child] considering all relevant factors including the factors set out in TCA 36-6-106. [Child] is a well-loved child who is bonded to both parents and also to his stepmother, [S.H.]. He has been well cared for and provided for by his father. [Mother] has been the primary caregiver; however, [Father] has been involved in his life since his birth as much as possible. [Father's] involvement has been hampered by [Mother]

for the past year. He supported the child from day one and did not stop when [Mother] said he might not be the father.

[Mother] did not work during her pregnancy nor anytime during 2001 yet she put the child in daycare during the week and he stayed in Morristown with his grandmother each weekend. The grandmother [had been] married to an abusive alcoholic man. They now live in a duplex with him on one side and she on the other.

[Child] has a respiratory condition; an asthmatic condition that requires treatment that is affected by smoke. [Mother] smokes and her stepfather smokes. She admits that she smokes in her car and the undisputed evidence is that her house smells like smoke.

\*                          \*                          \*

[Mother] has not cooperated in allowing [Father] visitation. She insisted on him exercising his visitation by picking [Child] up in Knoxville on Tuesday and bringing him back on Thursday. She would only allow [Father] to do the transporting and claimed her car was not good enough to meet him in Cookeville. She knew this was impossible for him because of his [employment].

\*                          \*                          \*

[T]he Court finds that the love, affection and emotional ties existing between the child and parents is equal. The mother has been the primary caregiver; however, the child has spent much time in day care when she was not working or in school and spends weekends with a grandmother in Morristown. [Mother] has prevented the father from exercising his parenting.

[Child] is now about 2½ years of age and can certainly adapt to either parent being the primary caregiver without any trauma to him. [Father's] family unit is most stable and both parents are healthy. Factors 6,7, and 8 [of T.C.A. 36-6-106] do not apply. The character and behavior of the step-grandfather where [Child] spends most weekends is undesirable. The most compelling factor for the Court in making the decision in this case is the question of the willingness and

ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

Not only has [Mother] not tried to facilitate and encourage a relationship between the child and [Father] she has intentionally hindered a relationship. She has deliberately denied visitation. Her actions show that she is interested in obtaining large sums of money for herself and is willing to use the child and his relationship with his father as a means to obtain that end.

The Court believes that the father's credibility exceeds that of the mother and that he will facilitate and encourage the relationship between the mother and child.

The Court also believes that [Mother] will not facilitate and encourage the relationship between [Father] and [Child] but is likely to continue her present attitude.

\* \* \*

Considering all of the factors the Court does find that it is in the best interest of [Child] that [Father] be his primary custodian with liberal co-parenting time to be granted to [Mother].

On appeal, Mother argues that the trial court failed to properly consider and apply the factors governing custody awards in Tennessee. Since this case is factually driven, essentially Mother's argument is that the trial court should have believed her testimony and not Father's. Her brief asserts that "in the case at bar, the trial court stated it believed [Father] to be more credible, but the evidence in the record does not support [a] finding that he was more credible at the time of the November 4, 2003 hearing."

Custody determinations often hinge on factors including the parent's demeanor and credibility during the proceedings. Accordingly, appellate courts are reluctant to second guess the trial courts' decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. *D. v. K.*, 917 S.W. 2d 682, 685 (Tenn. Ct. App. 1995). We will not reverse a trial court's decision regarding custody unless the record clearly demonstrates that the trial court has abused its discretion. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn.1992). A discretionary judgment of a trial court should not be disturbed unless it affirmatively appears that "the trial court's

decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn.1999) (quoting *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996).

The trial court's findings of fact quoted at length above, while not all undisputed, are supported by the record. It further appears that the trial court properly considered and applied the factors set forth in Tenn. Code Ann. § 36-6-106. The trial court also considered the credibility of the parties-finding Father to be more credible than Mother. We hold that the evidence does not preponderate against the trial court's decision in Father's favor and therefore, we affirm the trial court's judgment granting Father primary custody.

## *IV.*

Although the trial court awarded Father custody of the child and did not otherwise grant Mother any of the relief she sought, Father was ordered to pay Mother's attorney fees in the amount of $14,960.47. Father appeals the award of attorney fees.

The American Rule, requiring litigants to pay their own attorney fees in the absence of a statute or agreement providing otherwise, is firmly established in this state. *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 194 (Tenn.2000); *John Kohl & Co. v. Dearborn & Ewing,* 977 S.W.2d 528, 534 (Tenn.1998). In this case since there was no agreement between the parties regarding attorney fees, Mother's entitlement of fees must be based on statute.

Mother argues that Tenn. Code Ann. § 36-5-103(c) provides statutory authority for an award of attorney fees in this case. That statute provides as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse *or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in* enforcing any decree for alimony and/or child support, *or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing*, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Emphasis added.

Tenn. Code Ann. § 36-5-103(c) only authorizes an award of attorney fees to a person "to whom custody of the child. . .is awarded." Mother was not awarded custody; therefore § 36-5-103(c) does not provide for an award of attorney fees to her in this case. In addition, Tenn. Code Ann. §36-5-103(c) appears to apply to a recovery by a party to a divorce action or a subsequent hearing. This was neither. Although Father has the financial means to pay Mother's attorney fees, this fact cannot create a basis for the award of fees when none exists either by contract or statute.

Mother also cites Tenn. Code Ann. § 36-2-311, which provides in relevant part as follows:

(a) Upon establishing parentage, the court shall make an order declaring the father of the child. This order shall include the following:

\* \* \*

(9) Determination of the custody of the child pursuant to chapter 6 of this title;

(10) Determination of visitation or parental access pursuant to chapter 6 of this title;

(11)(A) Determination of child support pursuant to chapter 5 of this title.

\* \* \*

(14) Determination of the liability for counsel fees to either or both parties after consideration of all relevant factors.

This statute provides for an award of attorney fees which were incurred as a result of Mother's petition to establish paternity. In this paternity action, the trial court was required to make a finding as to paternity, as well as custody, visitation and child support. The decision whether to award attorney fees is within the sound discretion of the trial court. In this case, the trial court made a finding of fact that the Mother's counsel had provided a valuable legal service to the Mother, as well as to the minor child. An award of reasonable attorney fees is appropriate when the services of a parent's attorney inures to the benefit of a minor child. Attorney fee awards are reviewed under an abuse of discretion standard. *Dalton v. Dalton*, 858 S.W. 2d 324, 327 (Tenn. Ct. App. 1993). We do not find that the trial court abused its discretion in ordering Father to pay Mother's attorney fees.

*V*.

We observe that the trial court did not set any child support for Mother to pay to Father for the benefit of the minor child. This was based on the request from Father that Mother not be required to pay child support. Although not raised as an issue on appeal, we are compelled to raise this issue in our discretion pursuant to Tenn. R. App. P. 13(b).

Tenn. Code Ann. § 36-2-311 provides that upon establishing parentage, the court's order shall include a determination of child support.

Pursuant to Tenn. Code Ann. § 36-5-101, the trial court in determining the amount of child support must apply as a rebuttable presumption the Tennessee Child Support Guidelines. The stated goals of these guidelines include encouraging a parent paying support to maintain contact with their child(ren) and to ensure that a minimum amount of child support is set for parents with a low income in order to maintain a bond between the parent and the child. See Tenn.Comp.R.& Regs., ch. 1240-2-4-.02(d) and (f). These guidelines require the court to order child support based on the appropriate percentage of all net income of the obligor. See Tenn.Comp.R.& Regs., ch.1240-2-4-.04(3).

Father apparently did not wish to impose a financial hardship on Mother by having her pay child support. While it is true that Father at this time has the financial means to support the child without assistance from Mother, this fact does not eliminate Mother's obligation to support her child. Every parent is obligated to support his or her child during the child's minority. Tenn. Code Ann. § 34-11-102. The obligation for parents to support, care for and nuture their children is joint, and the extent of their duty to support depends on their ability to provide that support. *State ex rel. Grant v. Pragrais*, 979 S.W. 2d 594, 600-601 (Tenn. Ct. App. 1997).

As a general rule, the custodial parent may not waive the minor child's right of support. *Norton v. Norton*, No. W1999-02176-COA-R3CV, 2000 WL 52819 at *4 (Tenn. Ct. App. Jan. 10, 2000). See *Cagle v. Davis*, 1989 WL 44921, at *3 (Tenn. Ct. App. May 5, 1989), *perm app. denied* (Tenn. Aug. 7, 1989); see also *Vickers v. Scinta*, No. 01A01-9507-CH-00281, 1995 WL 656881, at *2 (Tenn. Ct. App. Nov. 9, 1995) (*no perm. app. filed*); *Barzizza v. Barzizza*, No. 02A01-9110-CV-00246, 1992 WL 139862, at *6 (Tenn. Ct. App. June 23, 1992) (*no perm. app. filed*); *Pera v. Peterson*, 1990 WL 200582, at *2 (Tenn. Ct. App. Dec. 14, 1990) (*no perm. app. filed*); *State ex rel. Woody v. Morris*, 1990 WL 2867, at *2 (Tenn. Ct. App. Jan. 19, 1990) (*no perm. app. filed*).

The child is the beneficiary of the child support payments made by the non-custodial parent. See *Rutledge v. Barrett*, 802 S.W. 2d 604, 607 (Tenn. 1991). It is against public policy to allow the

custodial parent to waive the child's right to support. See *Pera v. Peterson*, 1990 WL 200582 (Tenn. Ct. App. Dec. 14, 1990).

Accordingly, we find that the trial court erred in not setting Mother's child support obligation to Father. Accordingly, we remand this case to the trial court to set Mother's child support obligation to Father pursuant to the Tennessee Child Support Guidelines.

For the aforementioned reasons, the judgment of the trial court granting custody to Father is affirmed, the award of attorney fees to Mother is affirmed, and this cause is remanded to the trial court to set the amount of Mother's child support obligation pursuant to the Tennessee Child Support Guidelines, for any action consistent with this opinion, and for collection of costs below. Costs on appeal are assessed to the Mother, A.B.C., and her surety.

_____
SHARON G. LEE, JUDGE