FILED

04/20/2021

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2021

IN RE BRILEE E. ET AL.

Appeal from the Circuit Court for Montgomery County
No. CC-19-CV-1982        Kathryn Wall Olita, Judge

_____

No. M2020-00527-COA-R3-JV

_____

Two children were removed from their grandmother's custody and subsequently adjudicated dependent and neglected. The grandmother appeals the trial court's denial of her petition for custody of the children, asserting that granting her custody is in the children's best interest. We affirm the trial court's judgment as to one child and dismiss the appeal as moot as to the other.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Appeal Dismissed in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Travis N. Meeks, Clarksville, Tennessee, for the appellant, Melissa E.

Herbert H. Slatery III, Attorney General and Reporter, and Lexie A. Ward, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

OPINION

Factual and Procedural Background

Brilee, born in December 2011, and her brother, Brayden, born in October 2013, are the grandchildren of Melissa E. ("Grandmother").[1] The children began living with Grandmother in October 2013. They do not share the same father, and the record has no information concerning the children's interaction, if any, with their respective fathers. In July 2014, Grandmother was granted legal custody of the children.

_____

[1] In cases involving custody of minors, it is this Court's policy to remove the full names of children and other parties to protect their identities.

In September 2017, the Tennessee Department of Children's Services ("DCS") filed a verified petition to adjudicate the children dependent and neglected and for temporary custody in the Montgomery County Juvenile Court ("the juvenile court"). The petition followed an August 2017 referral alleging illegal drug use and trafficking at Grandmother's home, as well as concerns for Brilee's safety due to unknown males "in and out of the home." According to the petition, Grandmother refused to take a drug screen during each of two unannounced home visits conducted by DCS in response to the referral. DCS then secured an investigative order and conducted a third unannounced home visit, during which an unidentified female, Brayden, Grandmother, and her paramour Bobby E. were present. Illegal drugs and drug paraphernalia were found throughout the home and within easy access to the children. After the visit, Grandmother consented to a search of the home by the Montgomery County Drug Task Force, which uncovered additional illegal drugs. Grandmother consented to a drug screen and tested positive for amphetamines, methamphetamines, oxycodone, and THC.[2] Bobby E. tested positive for methamphetamines and THC. On September 19, 2017, the juvenile court entered a protective custody order placing the children in the temporary legal custody of DCS, having found probable cause that they were dependent and neglected under Tennessee Code Annotated section 37-1-102(b) and that it was against their "welfare to remain in the home for the reasons set out in the petition."

In December 2018, Grandmother filed a petition for legal custody or visitation of the children in the juvenile court. The petition was heard on January 15, 2019, but no transcript of the hearing appears in the record. In May 2019, the juvenile court entered an order denying Grandmother's petition based on her "ongoing drug problem and her failure to prove that there has been a material change in her circumstances." Specifically, the juvenile court noted that at the time the children were removed from her custody in September 2017, Grandmother tested positive for methamphetamines, oxycodone, and THC; that the children were adjudicated dependent and neglected in March 2018,[3] due, in part, to Grandmother's drug use; that an October 2017 permanency plan required her to successfully complete an alcohol and drug program to address her substance abuse issues; that as late as July 2018, Grandmother was failing drug screens; and that after falling asleep during a session, she was "kicked out of her drug program." The juvenile court also dismissed Grandmother as a party to the case.

Grandmother erroneously appealed the juvenile court's denial of her petition for custody to this Court. We transferred the appeal to the Montgomery County Circuit Court

---

[2] "THC is a marijuana metabolite that is stored in fat cells and can be detected in the body up to thirty days after smoking marijuana." *Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 674, 677 (Tenn. 2007).

[3] The order adjudicating the children dependent and neglected does not appear in the record and is not being challenged in this appeal.

("the trial court") pursuant to Tennessee Code Annotated section 16-4-108(a)(2),[4] finding that under Tennessee Code Annotated section 37-1-159(a), an "appeal from any final order or judgment in . . . [a] dependent and neglect proceeding . . . may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo." *In re Brilee E.*, No. M2019-00927-COA-R3-JV (Tenn. Ct. App. Sept. 19, 2019) (order). Upon transfer, the trial court appointed attorney Dailey E. Wilson as guardian ad litem for the children.

The trial court heard the case de novo on January 14, 2020. Grandmother testified on her own behalf, and DCS offered Savannah R. Hayward as its only witness. Grandmother stated that she received legal custody of the children in 2014. She added that she had been taking care of Brilee most of her life and of Brayden since birth, being the primary provider for the children until the juvenile court gave DCS custody of the children in September 2017. Grandmother said that DCS did not use local case workers to assist her because her "boyfriend's step-sister works at DCS." She insisted that she completed an alcohol and drug class and a parenting assessment, as required under the permanency plan, "in order for the grandchildren to be able to return to [her]." Grandmother admitted that she refused a drug screen during DCS's August 2017 visits and that she failed a court-ordered drug screen in January 2019. She stated, however, that she got her own hair follicle test because she disagreed with the drug screen results. Grandmother did not recall the date of the hair follicle test or introduce into evidence the test results and did not dispute that the test may have occurred prior to the hearing of her petition in juvenile court in January 2019. As to income, Grandmother said she receives $800 per month in social security benefits.

Ms. Hayward testified she became DCS's designated social services worker for the case at some point between May and July 2018. Her role was to assist the family with reunification or take other steps of permanency to ensure the children's safety. She explained that under the permanency plan, Grandmother was required to "complete an assessment for parenting and drug [and] alcohol and complete any of the recommendations from that, drug screens, walk throughs of the home, stay away from known drug users and abusers." According to Ms. Hayward, Grandmother's alcohol and drug assessment recommended intensive outpatient services. She stated that the juvenile court ordered Grandmother to take a drug screen during a hearing on January 15, 2019, and that Grandmother tested positive for methamphetamines, oxycodone, and THC. Ms. Hayward said that at the hearing, Grandmother presented the juvenile court with a hair follicle test dated January 4, 2019.

With respect to the children, Ms. Hayward expressed concern about potential exposure to drugs if they were returned to Grandmother, noting that Grandmother did not

---

[4] Cases appealed to "the wrong court shall by that court be transferred to the court having jurisdiction of the case." Tenn. Code Ann. § 16-4-108(a)(2).

- 3 -

complete the intensive outpatient program recommended under the alcohol and drug assessment. Ms. Hayward testified that the children are well-adjusted in their pre-adoptive foster home and that they call their foster parents "mother and father." She added that the children have never changed foster homes and that she believes remaining in the foster home is in the children's best interest. Ms. Hayward acknowledged that she has never worked directly with Grandmother. She stated, however, that DCS had worked with Grandmother for approximately one year to attempt reunification and had maintained communication with her until the juvenile court removed her as a party in May 2019. In response to a question from the trial court, Ms. Hayward said she sees the children twice a month. Based on her involvement with the children since their removal from Grandmother's custody in September 2017, the guardian ad litem agreed with Ms. Hayward that it was in the children's best interest to remain in DCS custody.

On March 2, 2020, the trial court entered an order denying Grandmother's petition. The trial court stated that "the parties agreed that there is clear and convincing evidence that the issues which led to the finding of dependency and neglect by the juvenile court exist *as of the date of de novo review*." (Emphasis added). Consequently, the trial court proceeded to set forth its analysis of the factors listed in Tennessee Code Annotated section 36-6-106 to determine whether Grandmother's petition for custody should be granted, finding by clear and convincing evidence that it was in the children's best interest to remain in DCS custody. Grandmother timely appealed the ruling to this Court.

## Issues Presented

Grandmother challenges the trial court's findings concerning the best interest factors set forth in Tennessee Code Annotated section 36-6-106 on which the trial court relied to deny her petition for custody. DCS responds that the trial court properly denied the petition but also asserts that this appeal has been rendered partially moot by events that occurred since the trial court entered the order denying Grandmother's petition.[5]

## Standard of Review

This Court reviews the trial court's findings of fact de novo upon the record, accompanied by a presumption of the correctness, unless the preponderance of the evidence is otherwise. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citing Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984)). We review the trial court's conclusions of

---

[5] This Court granted DCS's motion to consider the following post-judgment facts: 1) the children's mother executed a surrender of her parental rights to both children on October 22, 2020; 2) Brayden's father executed a surrender of his parental rights regarding Brayden on October 23, 2020; and 3) the juvenile court entered an order on November 5, 2020, granting full guardianship of Brayden to DCS.

law de novo, with no presumption of correctness. *Id.* When the trial court's findings of fact "rest on a determination of credibility and the weight of oral testimony, appellate courts give great deference to a trial court." *Kincade v. Kincade*, No. M2017-00797-COA-R3-CV, 2018 WL 1631415, at *5 (Tenn. Ct. App. Apr. 4, 2018) (citing *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006); *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007)). In addition, this Court has noted:

> Trial courts are vested with wide discretion in matters of child custody. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). A determination of custody and visitation often hinges on subtle factors such as the parents' demeanor and credibility during the trial proceedings. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Absent some compelling reason otherwise, considerable weight must be given to the trial court's judgment with respect to the parties' credibility and their suitability as custodians of children. *Bush v. Bush*, 684 S.W.2d 89, 94–95 (Tenn. Ct. App. 1984).

*Dishon v. Dishon*, No. M2017-01378-COA-R3-CV, 2018 WL 3493159, at *5 (Tenn. Ct. App. July 20, 2018) (cleaned up).

## Analysis

### I.
### Partial mootness

As a threshold issue, we first address DCS's argument that this appeal has been rendered moot as to one of the children, Brayden. In support of this argument, DCS asserts that following entry of the trial court's order denying Grandmother's petition for custody, Brayden's mother and father surrendered their parental rights as to him and the juvenile court awarded "complete custody, control, and full guardianship" of Brayden to DCS. Therefore, DCS argues, the determination of Brayden's custody is no longer at issue.

Generally, this state's appellate courts dismiss appeals that have become moot. *Norma Faye Pyles Lynch Fam. Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 210 (Tenn. 2009) (referencing a tradition of "restraint in addressing issues when the parties do not have a continuing, real, live, and substantial interest in the outcome"). An appeal becomes moot when it ceases to be justiciable; that is, it no longer involves "a genuine, continuing controversy requiring the adjudication of presently existing rights." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000). In other words, the appeal "no longer serves as a means to provide some sort of judicial relief to the prevailing party." *All. for Native Am. Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn.

Ct. App. 2005) (citation omitted). Thus, the resolution of this issue turns on whether the juvenile court's order granting full guardianship of Brayden to DCS deprives Grandmother of judicial relief should she prevail in her challenge to the trial court's denial of her petition.

A surrender of parental rights, like the one Brayden's parents executed, has "the effect of terminating all rights as the parent or guardian to the child who is surrendered." Tenn. Code Ann. § 36-1-111(r)(1)(A)(i) (2017). Further, our Supreme Court has observed that section 36-1-111 "anticipates . . . that the surrender of parental rights . . . is made in favor of a specific other person or entity who must (or will soon) have physical custody of the child, and that the child will be made available for adoption." *In re Angela E.*, 303 S.W.3d 240, 247 (Tenn. 2010) (internal citations omitted). The order of the juvenile court granting guardianship of Brayden to DCS "supersede[s] prior orders of custody or guardianship of that court and of other courts . . . ." *Id.* § 36-1-113(n); *see also In re Alexis S.*, No. E2018-01989-COA-R3-PT, 2019 WL 5586820, at *13 (Tenn. Ct. App. Oct. 29, 2019). As a result, the juvenile court's order adjudicating Grandmother's petition for custody, which is the subject of this appeal, has been displaced as to Brayden. Inasmuch as the order challenged by Grandmother in this appeal is no longer determinative of Brayden's custody status, her appeal as to him has ceased to be justiciable. We, therefore, dismiss it as moot.

## II.
### Statutory best interest factors

We now take up Grandmother's contention that "the preponderance of the evidence negates the presumption of correctness of the Trial Court's findings" in the order denying Grandmother's petition for custody as to Brilee. In so doing, we are mindful of our Supreme Court's admonition that "[a]ppellate courts should reverse custody decisions 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence.'" *Kelly v. Kelly*, 445 S.W.3d 685, 696 (Tenn. 2014) (quoting *Armbrister*, 414 S.W.3d at 693). Here, the trial court based its ruling on its analysis of the best interest factors for custody determinations set forth in Tennessee Code Annotated section 36-6-106(a), which states that in "any . . . proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a) (2017); *see also Kelly*, 445 S.W.3d at 696 ("[I]n addressing these [custody] issues, the courts [a]re required to consider the . . . factors enumerated in [section] 36-6-106(a)(1)–(10)."). We review each statutory factor in turn.

The first factor considers the "strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child." Tenn. Code Ann. § 36-6-106 (a)(1). The record supports the trial court's finding that Grandmother performed

- 6 -

the majority of parenting responsibilities relating to Brilee prior to her removal from Grandmother's care in September 2017. The record also supports the finding that Brilee's foster parents have provided for all of her needs from September 2017 until Grandmother's petition for custody was heard in January 2020. Ms. Hayward testified that the children are well-adjusted at the foster home and that they call the foster parents "mother and father." We find this factor weighs in favor of Brilee's foster placement. For the same reasons, we find that the fifth factor also weighs in favor of her current placement. *See id.* § 36-6-106(a)(5) ("The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities.").

The second factor examines "[e]ach . . . caregiver's past and potential for future performance of parenting responsibilities . . . ." *Id.* § 36-6-106 (a)(2). As noted, the record shows that Grandmother performed the majority of parenting responsibilities until the children were removed from her care. Her ability to perform these responsibilities in the future, however, appears hindered by issues related to drug use, including a positive drug screen more than a year after the children's removal and her failure to complete the treatment programs recommended in her alcohol and drug assessment. Conversely, by the time of the trial court hearing, Brilee had been in her foster parents' care for almost two and a half years without incident and had been attending school and therapy. We agree with the trial court's conclusion that this factor weighs in favor of continuing the foster placement. For the same reasons, we reach the same conclusion as to the tenth factor. *See id.* § 36-6-106 (a)(10) ("The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment.").

The third factor provides that the "[r]efusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings." *Id.* § 36-6-106 (a)(3). The record indicates that Grandmother completed an alcohol and drug assessment but failed to follow its recommendations. Ms. Hayward testified that Grandmother also completed a parenting assessment. The record does not show whether the parenting assessment provided recommendations or if Grandmother followed them, if any. We find, contrary to the trial court, that this factor does not weigh against Grandmother. Likewise, we find that the fourth factor does not weigh against either party. This factor accounts for the "disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care." *Id.* § 36-6-106 (a)(4). The trial court found that Grandmother "cares a great deal for the children," and the evidence of her role in taking care of Brilee prior to removal substantiates this finding. The trial court also found and the record reflects that the foster parents have met all of Brilee's needs, including participation in therapy. In our view, the evidence indicates that both Grandmother and the foster parents have shown a disposition to meet Brilee's needs.

The sixth factor considers the "love, affection, and emotional ties existing between

- 7 -

each parent and the child." *Id.* § 36-6-106 (a)(6). The trial court found that Grandmother "clearly loves her grandchildren very much." Grandmother, however, stated at the hearing that she has not seen the children since June 2018. Ms. Hayward testified that the children called their foster parents "mother and father." As the trial court did, we find that this factor weighs in favor of continuing the foster placement, recognizing that Brilee had been with the foster parents for over two years by the time of the trial court hearing.

The seventh factor accounts for the "emotional needs and developmental level of the child." *Id.* § 36-6-106 (a)(7). Ms. Hayward testified that the foster parents make sure that the children attend their out-of-school therapy. The record contains no further evidence concerning this factor, and we conclude this factor favors continuing foster care.

The eighth factor is the "moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child." *Id.* § 36-6-106 (a)(8). The alcohol and drug assessment taken by Grandmother recommended intensive outpatient services, which she did not complete. We cannot conclude from the record whether Grandmother followed the recommendations of her parenting assessment, if any, as required by the permanency plan after removal of the children. These unaddressed issues cast doubt on Grandmother's fitness to safely parent Brilee. As the trial court did, we find that this factor weighs against Grandmother.

The ninth factor is the "child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities." *Id.* § 36-6-106 (a)(9). Brilee has lived together with her younger brother, Brayden, during her time with Grandmother before removal and with her foster parents thereafter. Ms. Hayward testified that the children are well-adjusted and have been attending school and therapy while in foster care. We agree with the trial court that this factor slightly favors continuing foster care.

The record contains no evidence of physical or emotional abuse by Grandmother or the foster parents; of the character and behavior of any other person who resides in or frequents their homes and such person's interactions with the child; or of their employment schedules. *See id.* § 36-6-106 (a)(11), (12), (14). The thirteenth factor is inapplicable because of Brilee's age. *See Id.* § 36-6-106 (a)(13) ("The reasonable preference of the child if twelve (12) years of age or older.").

Having reviewed the statutory factors in light of the record, we conclude that the evidence does not preponderate against the trial court's finding that it is in Brilee's best interest to remain in DCS custody and with her foster parents. In sum, we find no basis to upend Brilee's stable and successful foster placement and return her to a situation where we cannot conclude that the circumstances that caused her removal have been resolved. The trial court did not err in denying Grandmother's petition for custody.

## **Conclusion**

We dismiss the appeal as moot as to Brayden and affirm the judgment of the Montgomery County Circuit Court as to Brilee. Costs of this appeal are taxed to the appellant, Melissa E., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE